IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCOTT MICHAEL HURD,<br>    Plaintiff,<br><br>    v.<br><br>PENNSYLVANIA DEPT. OF<br>CORRECTIONS, *et al.*,<br>    Defendants. | :<br>:<br>:<br>:   CIVL ACTION NO. 21-CV-1729<br>:<br>:<br>:<br>: |

MEMORANDUM

**JONES, J.**                                                                                                           **APRIL 27, 2021**

Plaintiff Scott Michael Hurd, a prisoner currently incarcerated at SCI-Phoenix, brings this *pro se* civil action pursuant to 42 U.S.C. § 1983, based on the medical care he has received at SCI-Phoenix. The Court also construes his Complaint as raising a claim under Title II of the Americans with Disabilities Act ("ADA") based on a failure to accommodate a disability. He also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Hurd leave to proceed *in forma pauperis*, dismiss certain claims without prejudice, and permit other claims to proceed. Hurd will be granted leave to file an amended complaint.

**I.     FACTUAL ALLEGATIONS**[1]

The Complaint names as Defendants the Pennsylvania Department of Corrections ("DOC") and several personnel at SCI-Phoenix, Dr. Desantis, Ms. B. Hunar, and Dr. Stephen Weiner. (ECF No. 2 at 1-3.)[2] The Court understands Hurd to bring claims for deliberate indifference to medical needs, as well as an ADA claim, that are based on three separate instances of alleged improper conduct by Defendants. While Hurd's Complaint describes the

---

[1] The facts set forth in this Memorandum are taken from Hurd's Complaint and attached exhibits.

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

three allegations of misconduct, (*see id.* at 4-5), he also has attached to his Complaint copies of grievances he filed pertaining to these incidents, as well as copies of correspondence with various Defendants and other prison staff members, and sick call request forms. (*See* ECF No. 2, Exh. 1 at 1-33.)

First, Hurd alleges that he has been denied proper medical care to address swelling and extreme pain in both legs and feet since June 2020 despite his repeated attempts to obtain treatment, and that the problem still had not been sufficiently addressed as of the filing of the Complaint. (ECF No. 2 at 4-5.) Specifically, Hurd alleges that he was "put in a wheelchair" in June 2020 "by Dr. Desantis – contract Dr. through DOC." (*Id.* at 5.)[3] While medical personnel increased the dosage of Neurotin, he has "followed up continuously with no more treatment." (*Id.*) Hurd claims that "the pain started to get extreme in June 2020, and as of today with all going on and happened its unbearable." (*Id.*)

Hurd filed several grievances in an attempt to obtain additional treatment for his condition. (*See* ECF No. 2, Exh. 1 at 7-21.) From June 2020 to December 2020, Hurd also corresponded directly with Defendant Hunar, whom Hurd identified as the Medical Director,[4] regarding Hurd's attempts to obtain further treatment, including his belief that he was to be seen by a specialist. (*See id.* at 22-24, 26, 28.) The responses from Defendant Hunar reflect that she was investigating Hurd's requests and that she directed Hurd to submit sick call slips if needed. (*See id.*) It appears that Hunar initially represented that a specialist appointment had been ordered, and later reported that Hurd did not have a referral on file for a specialist. (*Id.* at 22, 24,

---

[3] Hurd identifies Dr. Desantis as "trauma triage east side of SCI-Phoenix." (ECF No. 2 at 4.)

[4] Defendant Hunar's signature indicates a title of "CHCA PHX" which the Court understands to be Corrections Healthcare Administrator at SCI-Phoenix. (*See, e.g.*, ECF No. 1, Exh. 1 at 22.)

2

26.) The reason for change in course of treatment is not clear from Hurd's filing. In October 2020 and December 2020, Hurd also wrote to Defendant Wiener regarding the lack of treatment. (*See id.* at 25, 27.)[5] Dr. Weiner's response indicates that he would set up a "Doctor line" to see Hurd "once we open back up the medical dept." (*Id.* at 25.) It appears from Hurd's grievances and correspondence that he claims he was told by Dr. Desantis in June 2020 that he would be seen by a specialist, but that such consultation did not occur. It also appears from the documentation that Hurd submitted with his Complaint that Hurd was told by a doctor in December 2020 that he has a blood clot and that an ultrasound and x-rays would be ordered, but that although the x-rays were completed, the ultrasound was not. (*See id.* at 18, 21.)

Second, Hurd alleges that he has been "denied treatment/activities while on the (DTU) – mental health unit" since March 22, 2021. (ECF No. 2 at 4-5.) Specifically, Hurd contends that prison officials violated DOC policy by permitting him only five hours, of the allotted twenty hours, of out-of-cell time delineated by prison regulations as part of his mental health treatment. (*Id.* at 5; ECF No. 2, Exh. 1 at 3-4, 34-41.)

Third, Hurd alleges that he has been denied "accessibility to handicap accommodations." (ECF No. 2 at 4.) Hurd contends that his rights pursuant to the ADA have been violated since March 22, 2021 when he was placed in the DTU, because his cell is not wheelchair accessible and the DTU does not have wheelchair accessible showers. (ECF No. 2, Exh. 1 at 5.) According to Hurd, "on B-B Block, there are no handicap accommodations – shower or cell and seeing how I am handicap and in a wheelchair I am unable to shower. The only handicap shower is in the 'COVID Unit.'" (ECF No. 2 at 5.) Moreover, Hurd alleges that he fell and sustained injuries on

---

[5] Hurd also wrote to Ed Yarger, DBT, and Deputy Sipple, neither of whom are parties to this case, regarding these same issues. (*See* ECF No. 2, Exh. 1 at 30-32.)

3

March 29, 2021 when using a regular, non-accessible shower.  (*Id.* at 5; ECF No. 2, Exh. 1 at 1-2.)  He contends that "after speaking to Lt. Hall, Counselor Baldwin, and U.M. Fanvak – absolute[ly] nothing has been done."  (ECF No. 2 at 5.)[6]

With respect to the second and third incidents, Hurd acknowledged that he recently had filed grievances pertaining to these incidents, indeed "within the last 3 days."  (*See* ECF No. 2 at 7.)  Hurd explained that he included them in his Complaint because they are "extremely serious."  (*Id.*)  According to Hurd, he has requested "punitive, compensatory, and declaratory damages," as well as proper medical care, in the grievances he filed.  (*Id.* at 5.)  Hurd similarly seeks damages in this case and "proper medical care."  (*Id.*)  He indicates that he is suing the Defendants in their individual and official capacities.

## II.  STANDARD OF REVIEW

The Court grants Hurd leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[7]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  Conclusory allegations do not suffice.  *Id.*  As Hurd is proceeding *pro se*,

---

[6] These individuals are not parties to this suit.

[7] However, as Hurd is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

4

the Court must construe his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

### A. Section 1983 Claims

The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Importantly, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Indeed, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

#### 1. Section 1983 Claims against the Department of Corrections

States are not considered "persons" for purposes of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989). Furthermore, the Eleventh Amendment bars suits against a state and its agencies in federal court when the state has not waived that immunity, *id.*, and the Commonwealth of Pennsylvania has not waived that immunity. *See* 42 Pa. Cons. Stat. § 8521(b). Because SCI-Phoenix is a prison within Pennsylvania's Department of Corrections, it

the Court must construe his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

### A. Section 1983 Claims

The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Importantly, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Indeed, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

#### 1. Section 1983 Claims against the Department of Corrections

States are not considered "persons" for purposes of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989). Furthermore, the Eleventh Amendment bars suits against a state and its agencies in federal court when the state has not waived that immunity, *id.*, and the Commonwealth of Pennsylvania has not waived that immunity. *See* 42 Pa. Cons. Stat. § 8521(b). Because SCI-Phoenix is a prison within Pennsylvania's Department of Corrections, it

is entitled to Eleventh Amendment immunity and is not a "person" for purposes of § 1983. *Lavia v. Pennsylvania, Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that, "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity" and is also not considered a person for purposes of § 1983); *see also Pettaway v. SCI Albion*, 487 F. App'x 766, 768 (3d Cir. 2012) (per curiam) ("[A]s a state agency and the prison it administers, the Department of Corrections and SCI-Albion are not 'persons' and thus cannot be sued under 42 U.S.C. § 1983."). The Court will therefore dismiss Hurd's § 1983 claims against Defendant DOC with prejudice.

### 2. Claims against Defendants Desantis, Hunar, and Weiner in their Official Capacities

In the Complaint, Hurd identifies Defendants Desantis, Hunar, and Wiener as employees of "Prime Care/PA Dept. of Corrections." (*See* ECF No. 2 at 2-3.) To the extent these Defendants are employees of the DOC, Hurd's § 1983 claims against them in their official capacity fail. Official capacity claims for retroactive relief against state officials are essentially claims against the Commonwealth. *See Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 309-10 (3d Cir. 2020); *see also Kokinda v. Pennsylvania Dep't of Corr.*, 779 F. App'x 938, 942 (3d Cir. 2019) (per curiam) (affirming dismissal of claimed violations of § 1983 against DOC and individual Commonwealth defendants sued in their official capacities because such claims are barred by Eleventh Amendment). Thus, to the extent they are employees of SCI-Phoenix, Hurd's official capacity claims against Defendants Desantis, Hunar, and Wiener fail for the same reasons his claims against Defendant DOC fail.

To the extent that Defendants Desantis, Hunar, and Wiener are employees of a private health company and Hurd seeks to bring suit against these Defendants in their official capacities,

such claims also fail. Such claims are essentially claims against PrimeCare, because "[o]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 690, n.55 (1978)). "[A] private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (per curiam) (quoting *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003)). Rather, in order to hold a private health care company like PrimeCare liable for a constitutional violation under § 1983, Hurd must allege the provider had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale*, 318 F.3d at 583-84 (citing *Bd. of the Cty. Comm'rs of Bryan Cty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)); *see also Lomax v. City of Philadelphia*, Civ. A. No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs.") (citations and quotations omitted). As Hurd has not alleged that any policy or custom of PrimeCare caused the constitutional violations he claims, his official capacity claims fail.

### 3. Deliberate Indifference Claim Relating to Treatment for Leg and Foot Pain

The Court understands Hurd's first claim as alleging that Defendants Desantis, Hunar, and Weiner were deliberately indifferent to Hurd's serious medical needs, in that he has been denied proper medical care to address swelling and extreme pain his legs and feet since June 2020, despite his repeated requests for additional care. (*See* ECF No. 2 at 4-5.) To state a

7

constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference can be shown by "a prison official intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Wilks v. City of Philadelphia*, 2019 WL 4261159, at *5 (E.D. Pa. Sept. 6, 2019) (citing *Casilla v. New Jersey State Prison*, 381 F. App'x 234, 236 (3d Cir. 2010)). Furthermore, "[a] medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). "[W]here denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." *Id; see also Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) (A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering."). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are

insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

The Complaint does not include any factual details about the Defendants' involvement in Hurd's medical care. Rather, the only factual support for Hurd's claims can be found in the grievances and correspondence he attached as exhibits, which the Court may consider as part of the Complaint. Although it appears Hurd is claiming that there has been some delay in his treatment, he does not plausibly allege that any of the individual Defendants were responsible for that delay or otherwise deliberately indifferent to his medical needs.

### a.  Defendant Desantis

Hurd alleges that he was "put in a wheelchair" in June 2020 "by Dr. Desantis – contract Dr. thru DOC." (ECF No. 2 at 5.) He further alleges that while the dosage of his medication was increased, he "followed up continuously" with "no more treatment" and the pain remained unbearable. (*Id.*) According to Hurd, he was told that he would see a specialist, but "nothing was being done to treat" him. (*Id.* at 7.)

Assuming that Hurd has sufficiently alleged a serious medical need, Hurd's allegations nonetheless lack adequate factual development to support a plausible inference that the actions of Defendant Desantis caused the claimed constitutional violation. Hurd asserts in the grievance documentation that Dr. Desantis made the referral. (*See, e.g.*, ECF No. 2, Exh. 1 at 9.) Nevertheless, it is unclear from the Complaint and exhibits whether Dr. Desantis was involved in Hurd's treatment after June 2020 and, if so, to what extent. "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode*, 845 F.2d at 1207. Hurd's allegations against Defendant Desantis are too vague and non-specific to support a plausible inference of deliberate indifference, and Hurd does not allege the personal involvement

of this Defendant beyond these vague allegations. *See Tolentino v. Smucker*, 2021 WL 1259418, at *1-2 (3d Cir. Apr. 6, 2021) (per curiam) (affirming dismissal of deliberate indifference claim against hospital administrator because plaintiff alleged no factual allegations against him) (citing *Iqbal*, 556 U.S. at 678). Accordingly, the Complaint falls short of stating an Eighth Amendment claim against Defendant Desantis.

### b.     Defendant Hunar

Although the Complaint identifies Defendant Hunar in the caption and list of defendants, Hurd presents no allegations therein regarding Defendant Hunar's involvement in this alleged violation. (*See* ECF No. 2.) The grievance documentation and correspondence attached to the Complaint show that Hurd reached out to Defendant Hunar on several occasions between June 2020 and December 2020 in an attempt to be seen by a specialist, as he believed had been ordered. (*See* ECF No. 2, Exh. 1 at 22-24, 26, 28.) The responses from Defendant Hunar reflect that she was investigating Hurd's requests and that she directed Hurd to submit sick call slips if needed. (*See id.*) It also appears that Hunar initially represented that a specialist appointment had been ordered, but later reported that Hurd did not have a referral on file for a specialist. (*Id.* at 22, 24, 26.) The reason for change in course of treatment is not clear from Hurd's filing. In any event, the attached documentation, without more, does not demonstrate deliberate indifference on the part of Defendant Hunar. Rather, the correspondence shows that Defendant Hunar sought to address Hurd's concerns by investigating his claim that he was to be seen by a specialist, and instructing him to submit sick call slips. *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) ("Because mere disagreement as to the proper medical treatment does not support a claim of an eighth amendment violation, when medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional

standards of care.") (internal quotations and citations omitted); *Sims v. Wexford Health Sources*, 635 F. App'x 16, 19 (3d Cir. 2015) ("[P]rison officials who are not doctors are not liable for responding directly to prisoner medical complaints where the prisoner is under the care of medical experts."); *Bailey v. McMahon*, Civ. A. No. 07-2238, 2014 WL 6982573, at *12 (M.D. Pa. Dec. 10, 2014) ("[F]or non-medical defendants, to fulfill the deliberate indifference element, Plaintiff must show that the non-medical prison official had reason to believe or actually knew that prison doctors or their assistants were mistreating or not treating Plaintiff."). Thus, the Complaint does not support a plausible claim that Defendant Hunar knew of a need for medical treatment but intentionally refused to provide it, delayed necessary medical treatment based on a non-medical reason, or prevented Hurd from receiving needed or recommended medical treatment.[8]

### c. Defendant Weiner

Similarly, Hurd has failed to set forth sufficient facts to support a plausible deliberate indifference claim against Defendant Weiner. The Complaint again does not present any factual allegations demonstrating the personal involvement of Defendant Weiner in the alleged Constitutional violation. (*See* ECF No. 2.) Furthermore, the exhibits attached to the Complaint reflect that when Hurd sought assistance from Dr. Weiner in October 2020 and December 2020, Dr. Weiner's responses indicate that he would set up a "Doctor line" to see Hurd "once we open back up the medical dept." (*See* ECF No. 2, Exh. 1 at 25, 27.) There simply are not enough facts in the Complaint to support a plausible inference that Defendant Weiner acted intentionally

---

[8] The Court also notes that Hurd attached to the Complaint an "Inmate's Request to Staff Member" form dated December 17, 2020, that was addressed to Defendant Hunar. (*See* ECF No. 2, Exh. 1 at 28.) Hurd again requested an explanation for the delay in seeing a specialist and in obtaining an x-ray and ultrasound for his leg pain. (*Id.*) A response provided by Kathy Levey indicates that the x-ray and ultrasound "will not be scheduled until the lockdown is lifted." (*Id.*)

to refuse to provide medical treatment, delayed treatment, or personally prevented Hurd from receiving treatment. Thus, Hurd has not stated a plausible Eighth Amendment claim against Defendant Weiner.

### 4. Deliberate Indifference Claim Relating to Mental Health Treatment

Hurd alleges that since March 22, 2021, prison officials have failed to follow DOC policy regarding the amount of time inmates on the DTU are permitted to spend out of their cells. (*See* ECF No. 2 at 5.) Hurd acknowledged that this claim arose out of recent events and that he had "just filed" grievances regarding the alleged deprivation. (*See* ECF No. 2, Exh. 1 at 3-4.) He also attached to the Complaint what appears to be a portion of the DOC policy pertaining to mental health care. (*See id.* at 34-41.) To the extent that Hurd seeks to bring an Eighth Amendment claim based on these events, Hurd has not alleged a serious medical need, since he has not described his mental health issues in any detail, and has pled no facts showing that the named individual Defendants demonstrated deliberate indifference to his serious mental health needs, or were even involved in these events. *See Farmer*, 511 U.S. at 837 (a prison official is not deliberately indifferent unless the official is both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he draws the inference). Thus, Hurd has not set forth a plausible Eighth Amendment claim regarding mental health treatment at this time.

B. ADA Claim[9]

The Court understands Hurd to allege that he has been housed on the DTU since March 22, 2021, but that neither the cell nor the shower facilities on that unit are wheelchair accessible. (*See* ECF No. 2 at 5.) Hurd attached to his Complaint a copy of a grievance dated March 28, 2021, requesting that he be housed in a wheelchair accessible cell and have access to a wheelchair accessible shower. (*See* ECF No. 2, Exh. 1 at 5-6.) Hurd noted that he was unable to have his wheelchair in his cell, and that during his "outside rec" time, he is "not allowed" to have his wheelchair "on the cage" such that he must "crawl, sit or try to stand the entire time" which is problematic for him due to severe nerve damage resulting from a "spinal and vertebrae injury in 1995." (*Id.* at 5.) Hurd further alleges that he suffered a fall and was injured on March 29, 2021, when using a non-handicap-accessible shower. (ECF No. 2 at 5.) Also attached to the Complaint is a copy of a grievance that details the fall and his subsequent treatment. (*See* ECF No. 2, Exh. 1 at 1-2.) According to Hurd, he spoke with certain non-defendant prison officials regarding his needs, but that as of the filing of the Complaint, "absolute[ly] nothing has been done." (ECF No. 2 at 5.)

The Court will permit Hurd to proceed at this time on his ADA claim against Defendant DOC based on the failure to provide reasonable accommodations for the use of his wheelchair.[10]

---

[9] To the extent Hurd also intended to raise a claim under § 504 of the Rehabilitation Act, that claim fails. Although the substantive standards for determining liability under the Rehabilitation Act and the ADA are the same, *see Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 275 (3d Cir. 2014), a party who seeks to proceed under § 504 "must show that the allegedly discriminating entity receives federal funding." *McDonald-Witherspoon v. City of Philadelphia*, 481 F. Supp. 3d 424, 439 (E.D. Pa. 2020) (citing *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 235 n.10 (3d Cir. 2013)); *see also* 29 U.S.C. § 794(a). The Complaint does not raise any allegations about federal funding, so this claim fails as pled.

[10] There is no basis for proceeding on ADA claims against the individual Defendants. First, although the United States Court of Appeals for the Third Circuit has not addressed the issue

13

*See* 42 U.S.C. § 12132. The ADA requires public entities, including state prisons, to provide, in all of their programs, services, and activities, a reasonable accommodation to individuals with disabilities. *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 287 (3d Cir. 2019); *see also Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998) (noting the phrase "services, programs, or activities" in Title II of the ADA includes recreational, medical, educational, and vocational prison programs).

"To successfully state a claim under Title II of the ADA, a person 'must demonstrate: (1) he is a qualified individual; (2) with a disability; (3) [who] was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to

---

precedentially, most courts "have held that Title II [of the ADA] does not authorize suits against government officers in their individual capacities." *Williams v. Hayman*, 657 F. Supp. 2d 488, 502 (D.N.J. 2008); *see also Kokinda*, 779 F. App'x at 942 ("Kokinda's claims for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability."); *Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) (per curiam) ("[T]he District Court could have properly followed the holdings of those circuits which have concluded that there is no individual damages liability under Title II of the ADA, which provides an additional basis to affirm the dismissal of this claim.").

Second, while a claim under Title II of the ADA for a past violation is cognizable against an individual defendant in his official capacity, any such official capacity claims against the individual Defendants in the present case cannot proceed as pled. *See Holden v. Wetzel*, Civ. A. No. 18-237, 2021 WL 1090638, at *4 (W.D. Pa. Mar. 22, 2021) (noting that official capacity claims for past violations of the ADA are theoretically actionable); *Johnson v. Tritt*, Civ. A. No. 18-203, 2020 WL 1911538, at *12 (M.D. Pa. Apr. 20, 2020) (finding plaintiff's claims for damages against defendants in their official capacities to be cognizable because Eleventh Amendment does not bar actions against state entities for monetary damages brought under Title II of the ADA for conduct that violates the Fourteenth Amendment). A plaintiff who seeks compensatory damages under the ADA, as does Hurd, must allege intentional discrimination under a deliberate indifference standard. *Furgess*, 933 F.3d at 289. To show deliberate indifference, the plaintiff must allege that defendants (1) had "knowledge that a federally protected right is substantially likely to be violated," and (2) failed "to act despite that knowledge." *Snider v. Pennsylvania DOC*, Civ. A. No. 15-951, 2020 WL 7229817, at *19 (M.D. Pa. Dec. 8, 2020) (quoting *Geness v. Admin. Office of Pennsylvania Courts*, 974 F.3d at 263, 274, n.11 (3d Cir. 2020)). Here, Hurd seeks compensatory damages, but has pled no facts that the individually named Defendants were aware of the failure to accommodate his need for wheelchair accessibility, much less that any one of them acted with deliberate indifference.

discrimination by any such entity; (4) by reason of his disability.'" *Haberle v. Troxell*, 885 F.3d 170, 178 (3d Cir. 2018) (quoting *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553 n.32 (3d Cir. 2007)) (alterations in original). A plaintiff "may assert a failure to accommodate as an independent basis for liability under the Disabilities Act by alleging the accommodation he seeks is reasonable . . . *i.e.* that it is necessary to avoid discrimination on the basis of disability." *Snider v. Pennsylvania DOC*, Civ. A. No. 15-951, 2020 WL 7229817, at *18 (M.D. Pa. Dec. 8, 2020) (internal quotations and citations omitted, alteration in original).

Taking Hurd's allegations as true, as the Court is obligated to do at this stage of the litigation, Hurd will be permitted to proceed on his ADA claim against Defendant DOC. *See Furgess*, 933 F.3d at 291-92 (finding prisoner stated plausible claim for disability discrimination based on prison's failure to provide him with accessible shower facility); *Shaw v. Pennsylvania Dep't of Corr.*, Civ. A. No. 17-229, 2018 WL 6831148, at *7 (W.D. Pa. Dec. 28, 2018) (permitting plaintiff's claim that prison violated Title II by refusing to provide her with a necessary accommodation for her mobility impairments to proceed to discovery because accommodations offered by the prison were insufficient to allow plaintiff to meaningfully access vital services).

### IV. CONCLUSION

For the reasons stated, Hurd's § 1983 claims against the Pennsylvania Department of Corrections are dismissed with prejudice. All other § 1983 claims are dismissed without prejudice. The Court will permit Hurd to proceed only on his claim against the Department of Corrections based upon Title II of the ADA. However, the Court will give Hurd an opportunity to file an amended complaint in accordance with the Court's Order accompanying this Memorandum in the event he can cure the defects in the § 1983 claims that are dismissed

without prejudice. Accordingly, the Court will not direct service at this time. If Hurd opts not to file an amended complaint, he may notify the Court of his intention to proceed only as to his remaining claim.

An appropriate Order follows, which provides further information about options for proceeding in this case.

**BY THE COURT:**

*/s/* **C. Darnell Jones, II**
**C. DARNELL JONES, II    J.**